## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL GUARDS UNION OF
AMERICA LOCAL 150,

    Petitioner-Plaintiff,

        v.                                                     Civil Action No. 25-583 (JEB)

CENTERRA GROUP, LLC,

    Respondent-Defendant.

## <u>MEMORANDUM OPINION</u>

Nathan Matthews, Matthew LaRock, and Adam Putnam previously worked as security guards for Defendant Centerra Group, LLC, where they were contracted out to positions with the Department of Energy.  As members of Plaintiff International Guards Union of America Local 150, their employment was governed by the collective bargaining agreement between Centerra and the Union.  In 2024, Matthews and LaRock took family and medical leave, only to return to work and find that their security clearances — necessary for their DOE positions — had been revoked and their jobs terminated.  Putnam, acting as Union President, helped grieve their terminations; in the ensuing back and forth, his security clearance was also revoked, and his position with DOE was eliminated shortly thereafter as well.  The Union brought this suit on behalf of the three men, seeking not to litigate any disputes, but to compel arbitration of them under the CBA.  Plaintiff has now moved for summary judgment, while Centerra has cross-moved to oppose arbitration.  The Court will grant both Motions in part and deny them in part.

## I.    Background

### A.  Factual Background

The facts that serve as the basis of this Court's decision are undisputed.  Like many people in today's fissured workplaces, Matthews, LaRock, and Putnam answered to multiple bosses: they were formally employed by one entity but were contracted out to work at another. See ECF No. 11-2 (Pl. SOF), ¶ 1.  Their former employer Centerra provides security services to various federal agencies, including DOE, where the men served as Protective Force Officers. Id., ¶¶ 1–2, 4; ECF No. 12-3 (Putnam Aff.), ¶ 5.  As Union members, their employment was governed by the CBA signed by Centerra and the Union.  See Pl. SOF, ¶ 1.  The CBA detailed various duties and requirements for the parties, including Article 4, Section 1, under which Centerra agreed to "not take any actions intentionally designed to compel or encourage the DOE to preclude or deny [facility] access" to employees and to "take all reasonable efforts and steps to work with the Government to lift or remove any terms or circumstances" that would impede an employee's continued placement at DOE.  See ECF No. 1-1 (CBA) at 2.

Relevant here, that CBA also contained an arbitration clause in Article 25, Section 6, which stated:

> It is the specific intention of the parties that the grievance and arbitration procedures set forth herein are the exclusive mechanism for the resolution of grievances, disputes, disagreements, or claims made under or related to this agreement.  Likewise, all statutory claims, issues, demands, or disputes arising under any state or federal law including, but not limited to Title 7 of the 1964 Human Rights Act, may be arbitrated under the provisions set forth herein as the sole remedy.

Id. at 28.  At the same time, the contract carved out an exception for terminations caused by an employee's loss of security clearance, exempting those disputes from arbitration.  Article 31, Section 12 of the CBA mandated that employees meet the "security clearance requirements

necessary for an Employee's labor category." <u>Id.</u> at 38.  Since having a security clearance is a "condition for employment" at DOE, employees "who fail[] to re-qualify or to retain" their clearance would "be subject to termination." <u>Id.</u>  The CBA made clear the non-arbitrability of such disputes: "Terminations for the reasons stated above will not be subject to arbitration." <u>Id.</u>

Sometime in 2024, LaRock and Matthews received approval to take leave under the Family and Medical Leave Act (FMLA) and the D.C. Family and Medical Leave Act (DCFMLA). <u>See</u> Pl. SOF, ¶¶ 2–4.  When they tried to return to work in December 2024, however, they were informed that their security clearances had been revoked, rendering them ineligible to continue working at DOE. <u>Id.</u>  They were then placed on administrative leave and permitted to seek other placements within Centerra's contracts, although the parties dispute the extent to which the two were offered meaningful alternative positions. <u>Id.</u>, ¶¶ 24–25; ECF No. 12-2 (Def. SOF), ¶¶ 24–25.  LaRock and Matthews filed grievances with Centerra and demanded arbitration, while Putnam, the Union President, played a key role in grieving their disputes. <u>See</u> Pl. SOF, ¶¶ 9–10.  The Company denied the grievances and declined the Union's request to arbitrate, citing Article 31, Section 12, the CBA clause that excludes security-clearance-related terminations from arbitration. <u>Id.</u>  Putnam then later had his security clearance revoked as well, and his position with DOE was also terminated. <u>Id.</u>, ¶ 11.  His grievance and request to arbitrate were similarly denied, with Centerra again citing the arbitration-exclusion provision. <u>Id.</u>

B.  <u>Procedural History</u>

In February 2025, Plaintiff brought this lawsuit to compel arbitration of Matthews, LaRock, and Putnam's grievances. <u>See</u> ECF No. 1 (Compl.) at 1.  Specifically, the Union sought to arbitrate the following issues: 1) whether Centerra had failed to perform its Article 4, Section 1 duties to mitigate clearance revocations by DOE; 2) whether Matthews, LaRock, and Putnam's

terminations had been for just cause; and 3) each employee's various FMLA/DCFMLA claims. See ECF No. 11-1 (Pl. Mot.) at 16. The parties have now cross-moved for summary judgment, with Plaintiff seeking to compel arbitration, id. at 1, and Defendant resisting it. See ECF No. 12-1 (Def. Mot.) at 1.

In the months between Plaintiff's initiating this lawsuit and its filing of its Motion for Summary Judgment, Matthews, LaRock, and Putnam, represented by the same counsel as Plaintiff here, filed a separate lawsuit to litigate their FMLA/DCFMLA claims against Centerra. Putnam v. Centerra Grp., LLC, No. 25-1272, ECF No. 1 (Compl.), ¶¶ 27–147 (D.D.C. Apr. 24, 2025). Centerra then flagged those separate proceedings for this Court, to whom that subsequent matter has now been transferred. See Def. Mot. at 1–2; Putnam, No. 25-1272, ECF No. 32 (Reassignment Notice) (D.D.C. Jan. 15, 2026). Concerned that the filing of the Putnam suit raised serious questions about whether Plaintiff had waived its right to arbitration, the Court ordered the Union to show cause why separate litigation of the employees' claims did not waive arbitration of them. See ECF No. 19 (Show Cause Ord.) at 1. Now in receipt of Plaintiff's response, the Court may proceed to its analysis.

## II.    Legal Standard

The Federal Arbitration Act allows a party aggrieved by another's failure "'to arbitrate under a written agreement for arbitration' [to] petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Rent–A–Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). When considering a petition to compel arbitration, "the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)." Brown v. Dorsey & Whitney, LLP, 267 F. Supp. 2d 61, 67 (D.D.C. 2003) (internal quotation marks and

citation omitted); see Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C. Cir. 2008).  Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  Since, as noted above, the facts relevant to this Court's decision are not in dispute, the Court may consider the Cross-Motions together.

Although the FAA "creates a strong presumption in favor of enforcing arbitration agreements, and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[,]' . . . parties cannot be forced into arbitration unless they have agreed to do so."  Hill v. Wackenhut Servs. Int'l, 865 F. Supp. 2d 84, 90 (D.D.C. 2012) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)).  "When deciding whether the parties agreed to arbitrate a certain matter," courts typically "apply ordinary state-law principles that govern the formation of contracts."  Aliron Int'l, Inc., 531 F.3d at 865 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

## III.    Analysis

There is no dispute that the CBA contains a valid arbitration clause binding on the parties.  See Def. Mot. at 9.  Instead, the Union and Centerra clash over who decides arbitrability and whether the arbitration clause extends to the issues in this case.  The Court looks separately at those questions and concludes with a brief discussion of attorney fees.

### A.  Arbitrability

As a threshold matter, the Court must determine who decides questions of arbitrability: the Court or the arbitrator.  "[U]nless the parties unmistakably agree to submit the issue of arbitrability to arbitration," arbitrability is a question of law for the courts.  Washington Mailers

Union No. 29 v. Washington Post Co., 233 F.3d 587, 589 (D.C. Cir. 2000) (citing AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986)).  Plaintiff argues that the parties intended for an arbitrator to decide arbitrability and that the CBA's incorporation of the Federal Mediation and Conciliation Services' Rules evinces such intent.  See Pl. Mot. at 16–17.  But the FMCS Rules say nothing about arbitrators deciding arbitrability.  In the absence of any contractual provision stating otherwise, the Court will decide what issues go to arbitration.

### B.  Scope of Arbitration

Now on to the scope of arbitration.  Plaintiff seeks to arbitrate three main issues: 1) whether Defendant honored its Article 4, Section 1 duties to take efforts to reverse any security-clearance revocations; 2) whether Matthews, LaRock, and Putnam were terminated for just cause; and 3) whether their FMLA rights were violated.  Defendant opposes arbitration on all issues.  The Court will consider each dispute in turn and decide whether it falls within the bounds of the arbitration clause.  In doing so, it also examines the question regarding waiver of arbitration mentioned in Section I.B, *supra*.

#### 1.  *Article 4, Section 1 Duties*

Article 4, Section 1 of the CBA imposes a duty on Centerra to "not take any actions intentionally designed to compel or encourage the DOE to preclude or deny [facility] access" to employees and to "take all reasonable efforts and steps to work with the Government to lift or remove any terms or circumstances" that would render an employee unable to work at DOE.  See CBA at 2.  The question of whether Centerra faithfully performed this contractual duty is undoubtedly within the scope of the CBA's arbitration clause, which sets forth arbitration as the "exclusive mechanism for the resolution of grievances, disputes, disagreements, or claims made under or related to this agreement."  Id. at 28.

Centerra does not dispute the broad coverage of the arbitration clause. It nonetheless resists the Court's conclusion by arguing that Article 31, Section 12, the provision that excludes clearance-related terminations from arbitration, applies. See ECF No. 17 (Def. Reply) at 4. In Centerra's view, questions around its Article 4 duties cannot be resolved "without also litigating the DOE's decision to revoke clearance and resulting [terminations]," which cannot be arbitrated per Article 31. Id. For that reason, Centerra argues, its Article 4 duties likewise are outside the scope of arbitration. Id. This logic falters at the first step — Centerra's Article 4 duties can certainly be evaluated separately from the terminations. Article 4 obligates Centerra to refrain from encouraging the Government to deny access to employees and to take steps to help minimize clearance revocation. Those efforts could be satisfactory even if clearance revocation and termination eventually result, and they could likewise be unsatisfactory even if employees are not ultimately fired. See New England R.R. Co. v. Conroy, 175 U.S. 323, 346 (1899) ("[No duty of effort] carries with it an absolute guaranty [of success]. Each is satisfied with reasonable effort and precaution."). Either way, an arbitrator can evaluate Centerra's conduct without encroaching on issues excluded from arbitration by Article 31. The Court will accordingly compel arbitration on Centerra's Article 4 duties.

Plaintiff has, at times, suggested that the Court should compel arbitration over whether DOE followed its own regulations, even though it is not a party to the CBA nor the arbitration clause within it. See ECF No. 15 (Pl. Reply) at 15–16. The Court's decision to compel arbitration of Centerra's Article 4 duties should not be construed as opening the door to arbitration of the Government's conduct. Those contentions sit firmly outside the scope of this contractual dispute.

2.  *Just Cause for Termination*

The Union also seeks to compel arbitration over whether Matthews, LaRock, and Putnam were terminated for just cause.  See Pl. Reply at 3–9.  Defendant does not contest that the arbitration clause generally covers termination disputes.  See Def. Mot. at 9.  Instead, Centerra's primary rebuttal is that arbitration of these specific terminations is prohibited because the men were all fired for losing their security clearances, and Article 31, Section 12 exempts terminations for those reasons from arbitration.  Id. at 8–9.  Plaintiff challenges this framing and argues that the revocations were not the real reason the employees were let go; in the Union's view, clearance revocation was used as a pretext to fire the employees for impermissible reasons, so Article 31's exclusion of "[t]erminations for [clearance] reasons" would not apply.  See Pl. Reply at 2; CBA at 38.

This leaves the Court in a bit of a bind.  To decide whether the arbitration-exclusion clause applies to the terminations at hand, the Court would need to resolve the underlying factual dispute over why the employees were fired, which is the question at the heart of the merits dispute.  If the Court found that Centerra's proffered reason was pretextual, which it must to hold that this dispute is arbitrable, that finding would lead ineluctably to the conclusion that Defendant lacked just cause to fire the men.  In other words, resolving this dispute would require the Court to put the cart before the horse, wading into the merits first as to decide the threshold arbitrability question.

While a court, and not an arbitrator, must normally determine "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy," Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002), the Supreme Court has cautioned that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is

not to rule on the potential merits of the underlying claims." AT&T Techs., 475 U.S. at 649.

Instead, "[t]he role of the courts is 'confined to ascertaining whether the party seeking arbitration

is making a claim which on its face is governed by the contract,' and the judicial task is limited

to construing the agreement for that purpose." Blake Const. Co. v. Laborers' Int'l Union, 511

F.2d 324, 327 (D.C. Cir. 1975) (quoting United Steelworkers v. Am. Mfg. Co., 363 U.S. 564,

568 (1960)).

   The entangled relationship between arbitrability and the merits here leads the Court to

conclude that the question of just cause is best suited to resolution by the arbitrator. To start, this

is not the kind of factual dispute over arbitrability that courts have found must be resolved by a

court. Jin v. Parsons Corp., 966 F.3d 821, 823 n.1 (D.C. Cir. 2020) (distinguishing between

factual disputes over "whether a valid, enforceable arbitration agreement exists," which must be

decided by a court under FAA, and "broader" set of questions about whether an existing

"arbitration agreement covers the claim(s) at issue," for which FAA contains no mandate). As

the Supreme Court explained in Howsam, the set of arbitrability questions that should go to a

court does not inherently include "any potentially dispositive gateway question." 537 U.S. at

83–84. Instead, courts should consider whether an arbitrability question falls into the "narrow

circumstance" where "contracting parties would likely have expected a court to have decided the

gateway matter," rather than believing that "they had agreed that an arbitrator would" decide the

issue. Id. Examples of such arbitrability questions include whether the arbitration contract binds

non-signatories, or whether an arbitration agreement survived a corporate merger. Id. at 84

(collecting cases). The question at hand is not that kind; just cause is very much an issue that the

contracting parties expected an arbitrator to decide under the terms of the CBA. See CBA at 37

("No Employee shall be disciplined, suspended, or discharged without just cause."); id. at 28

(mandating arbitration for "the resolution of grievances, disputes, disagreements, or claims made under or related to this agreement").

In this Court's view, the fact that the arbitrator's decision on the merits of the terminations will also implicitly determine arbitrability is an acceptable collateral consequence of honoring the "liberal federal policy favoring arbitration," Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25, and heeding the Supreme Court's repeated warnings to steer clear of the merits of arbitration disputes. AT&T Techs., 475 U.S. at 649. Our Circuit has held as much in the past. In Washington Mailers Union, the D.C. Circuit needed to interpret the phrase "regular, full-time positions" in the contract to determine if the dispute was excluded from arbitration. See 233 F.3d at 590. If it did so, however, that interpretation would also inadvertently resolve "the merits of the grievance." Id. For that reason, the Circuit concluded that the interpretive question, in which the merits and arbitrability were bound up together, was "not for [it] to decide." Id. It acknowledged that its holding would effectively send a question of arbitrability to the arbitrator but found that arbitration was nonetheless appropriate: "To be sure, by interpreting [the clause], the arbitrator may implicitly decide the arbitrability issue, but that outcome is inherent when the specific rights-based provision of the agreement is tied to the issue of arbitrability and not only to the issue of rights. When such a situation occurs, unless the issue is clearly excluded from arbitration, the interpretation of the rights-based provision should be left to the arbitrator." Id. In our case, there is no doubt that the arbitration clause would cover the terminations if they had not been caused by security-clearance revocations. And although Centerra argues that they were, the Union disagrees and contends that this framing is pretextual. The Court will accordingly decline to delve into the merits and leave the factual dispute over the terminations to be resolved by the arbitrator.

3.   *Rights Under FMLA*

Finally, Plaintiff seeks to compel arbitration of Matthews, LaRock, and Putnam's FMLA/DCFMLA claims, including whether they were offered equivalent positions upon their return to work as required by the statutes.  See Pl. Reply at 11–13, 14–15.  As with the prior two issues, the broad arbitration clause straightforwardly reaches these disputes: "[A]ll statutory claims . . . arising under any state or federal law, including but not limited to Title 7 of the 1964 Human Rights Act, may be arbitrated under the provisions set forth herein as the sole remedy." CBA at 28.  The Court concludes, however, that Plaintiff has waived its right to arbitrate in this instance.

It is well established that "a party may waive its right to arbitration by acting inconsistently with that arbitration right."  Khan v. Parsons Glob. Servs., Ltd., 521 F.3d 421, 425 (D.C. Cir. 2008) (internal quotation marks omitted); accord Zuckerman Spaeder, LLP v. Auffenberg, 646 F.3d 919, 922 (D.C. Cir. 2011).  For example, if "the party now moving for arbitration engaged in litigation activity that induced the other party and 'the district court to expend time and effort on disputes, the resolution of which would not' move the dispute toward arbitration," then a finding of waiver would be appropriate.  Partridge v. Am. Hosp. Mgmt. Co., LLC, 289 F. Supp. 3d 1, 17 (D.D.C. 2017) (quoting Zuckerman Spaeder, 646 F.3d at 922); see also Khan, 521 F.3 at 425–26 (finding waiver of arbitration right where defendant filed motion for summary judgment).  While caselaw provides useful examples of the kinds of litigation activity that have previously constituted conduct inconsistent with the arbitration right, Zuckerman Spaeder, 646 F.3d at 922–24, a waiver analysis is "inherently fact-bound" and will rest on an assessment of the "'totality of the circumstances.'"  Id. at 922 (quoting Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987).

As Defendant has pointed out, Matthews, LaRock, and Putnam, represented by Plaintiff's counsel and in privity with the Union as its members, Proctor v. District of Columbia, 74 F. Supp. 3d 436, 452 (D.D.C. 2014), filed a lawsuit against Centerra to litigate the very FMLA/DCFMLA claims Plaintiff seeks to arbitrate here on their behalf.   This strikes the Court as conduct inconsistent with the right to arbitrate.  Although Defendant did not directly raise waiver, courts act within their discretion in considering forfeited defenses.  See Day v. McDonough, 547 U.S. 198, 210 (2006) (affirming court that raised forfeited defense where parties were afforded fair notice and opportunity to present positions).  After the Court ordered Plaintiff to show cause why the separate lawsuit in Putnam did not waive its right to arbitration, the Union argued that the lawsuit concerned wholly different claims from the arbitration, so there was no inconsistency.  See ECF No. 20 (Show Cause Resp.) at 7–12.

It is true that a single set of facts can give rise to both a statutory lawsuit and an arbitration over an employee's contractual rights.  For example, the Supreme Court has held that prior arbitration of an employee's rights under a CBA's nondiscrimination clause does not preclude that employee from subsequently bringing a Title VII lawsuit regarding the same act of discrimination — the statutory and contractual claims are distinct, so litigating one and arbitrating the other is permissible.  Alexander v. Gardner-Denver Co., 415 U.S. 36, 59–60 (1974).  If this were the situation at hand, the Court would agree with Plaintiff that the employees' subsequent lawsuit did not waive the Union's right to compel arbitration.  Litigation of the statutory FMLA/DCFMLA claims would not constitute conduct inconsistent with the right to arbitrate contractual CBA claims.

The issue here is that the claims are not distinct: Plaintiff seeks to both arbitrate and litigate the employees' statutory claims.  Three key facts make it clear that Plaintiff is arbitrating

FMLA/DCFMLA claims, rather than separate contractual rights.  First, the Union says as much.
See, e.g., Compl., ¶ 16 (describing need to arbitrate "violations of the FMLA"); Pl. Mot. at 15
(stating that grievances to be arbitrated "specifically alleged violations of the FMLA and
DCFMLA"); Pl. Reply at 13 ("There is no basis for concluding that Centerra's violations of the
FMLA/DCFMLA are not subject to arbitration.").  Second, the only source of family-and-
medical-leave rights in this dispute are the statutes — the CBA itself includes no substantive
guarantees of leave, stating only that "Family and Medical Leave . . . will be granted in
accordance with applicable law."  CBA at 22.  Finally, the arbitration clause explicitly
contemplates arbitration of statutory claims, so arbitration of FMLA claims would not be
unexpected.  Id. at 28 (stating that CBA's arbitration processes apply to "all statutory
claims . . . arising under any state or federal law including, but not limited to Title 7 of the 1964
Human Rights Act"); 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 258 (2009) (parties may agree
to arbitrate statutory claims so long as intent to do so is clearly stated in collective bargaining
agreement).  These facts all indicate that Plaintiff is seeking to arbitrate Matthews, LaRock, and
Putnam's FMLA/DCFMLA claims.

    While the Union is correct that not every lawsuit waives a right to arbitrate over the same
facts, waiver applies in this case because the lawsuit and arbitration concern the same claims,
and suing over those claims is inconsistent with a desire to arbitrate them.  Int'l Energy Ventures
Mgmt., L.L.C. v. United Energy Grp., Ltd., 999 F.3d 257, 266 (5th Cir. 2021) ("[I]t is difficult to
see how a party could more clearly evince a desire [to relinquish the right to arbitration] than by
filing a lawsuit going to the merits of an otherwise arbitrable dispute.") (quoting Nicholas v.
KBR, Inc., 565 F.3d 904, 908 (5th Cir. 2009)).  The Court will thus deny Plaintiff's Motion to
compel arbitration of any FMLA/DCFMLA claims, including whether Centerra met its

obligations to place the employees in equivalent positions if it could not reinstate them and whether Centerra interfered with the employees' FMLA/DCFMLA rights. Those claims will instead proceed in the companion case.

       C. <u>Attorney Fees</u>

Finally, Plaintiff asks for attorney fees, arguing that the Court should sanction Centerra for refusing to arbitrate and requiring the Union to bring this action. <u>See</u> Pl. Mot. at 28–31. The Court will decline to do so. In the absence of a statutory or contractual mandate, "courts ought only to award fees where" a litigant engages in "bad faith, vexatious, [or] wanton" conduct "justifying the imposition of attorney[] fees." <u>Washington Hosp. Ctr. v. Serv. Emps. Int'l Union Loc. 722</u>, 746 F.2d 1503, 1509 (D.C. Cir. 1984). Plaintiff does not argue that the CBA provides for fees but nonetheless contends that Centerra's conduct warrants sanctions. <u>See</u> Pl. Mot. at 28–31. None of Defendant's conduct, however, rises to the level of being "bad faith, vexatious, [or] wanton." <u>Washington Hosp. Ctr.</u>, 746 F.2d at 1509. Although the Court will compel Centerra to arbitrate some of the issues brought by the Union, "[t]he fact that a party does not prevail before the district court does not necessarily establish that its conduct was 'vexatious' or 'wanton.'" <u>Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Liberty Mar. Corp.</u>, 330 F. Supp. 3d 451, 463 n.9 (D.D.C. 2018) (quoting <u>Nat'l Ass'n of Letter Carriers v. U.S. Postal Serv.</u>, 590 F.2d 1171, 1178 (D.C. Cir. 1978)). Plaintiff otherwise provides no evidence of conduct that would warrant sanctions.

## IV.    Conclusion

The Court, accordingly, will grant both Motions for Summary Judgment in part and deny them in part. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  February 10, 2026